IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

LEWIS LEO POTTER,

          Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

Case No. 1:15-cv-01809-AA
OPINION AND ORDER

AIKEN, Judge:

    For over ten years, plaintiff Lewis Leo Potter has been petitioning the Social Security Administration for disability benefits due to chronic pain. Plaintiff claims that this pain is so intense that he cannot lift more than ten pounds, walk for more than a block, and cannot sit or stand for long periods of time. Tr. 269. Plaintiff alleges this chronic pain prevents him from doing something as

simple as a load of laundry without requiring several hours of rest and recuperation. Tr. 159. This

is the third time his case has been appealed to this Court. This Court first remanded the case for

further proceedings in 2009. Tr. 325. The ALJ denied plaintiff's claim for disability again, and this

Court affirmed that decision. Tr. 319. The Ninth Circuit Court of Appeals reversed that decision and

remanded for further proceedings. Tr. 438. The ALJ denied benefits yet again on this second remand.

Tr. 424. The government concedes there were several errors in this decision now on appeal and urges

yet another remand for further proceedings. Def. Br. and Mot. for Remand at 2 (doc. 21). For the

reasons stated below, this case is instead remanded for an immediate award of benefits.

## BACKGROUND

In 2002, plaintiff began experiencing chronic pain in his right chest wall and sought medical

attention for this condition. Tr. 260. The pain became so persistent and intense that he quickly gave

up his search for work and began to limit his daily activities to those of minimal exertion. *Id*. He has

testified that he is unable to sit, stand, or lie down for prolonged periods of time without having to

get up, sit down, or otherwise adjust himself until the pain subsides. Tr. 269, 273. His treating

physician, Dr. Kahn, diagnosed him with chronic costrochondritis, an inflammation of the cartilage

between the ribs and the sternum, for which plaintiff has been taking Vicodin and Lidocane patches.

This treatment has had limited success, but often renders plaintiff unable to concentrate or function.

Tr. 261.

After three hearings spanning eight months, plaintiff's initial request for benefits was denied

on the grounds that his testimony wasn't entirely credible and was inconsistent with "any objective

medical finding." Tr. 19. This Court then granted a stipulated motion to remand for further

proceedings in 2009 with instructions to reevaluate plaintiff's testimony and to further develop the

medical record. Tr. 325.

A fourth hearing took place in August 2010. Afterwards, plaintiff was denied benefits again on the grounds that his testimony and that of his treating physician were not credible and "not supported by medically acceptable clinical and laboratory diagnostic technique[s]." Tr. 317. The ALJ also found plaintiff's pain testimony inconsistent with his ability to do yard work and basic household chores. Tr. 314. This Court affirmed, but the Ninth Circuit reversed and remanded for further proceedings in April 2014. Specifically, the Ninth Circuit held that symptoms such as the intensity of pain are subjective and cannot be measured in an objective fashion. Tr. 440. The Ninth Circuit also requested that the ALJ develop the record concerning plaintiff's refusal to undergo a nerve block procedure, which could potentially cure his condition. Tr. 442. The case was remanded to the ALJ for reevaluation of the credibility of plaintiff's subjective symptom testimony, particularly the reasoning behind his refusal to undergo a nerve block procedure. Tr. 441.

The fifth hearing before the ALJ took place in June 2015. The hearing went much as the previous four had with one notable exception. The Vocational Expert ("VE") noted plaintiff was only capable of working as a Surveillance System Monitor, an occupation with approximately 300 positions in Oregon statewide. Tr. 613. "Other than that," the VE testified, "my opinion would be that work in the sedentary work range would be precluded[.]" *Id.* Nonetheless, the ALJ determined plaintiff was not disabled. This appeal followed.

## STANDARDS

Both parties to this appeal concede the ALJ committed several errors and that the case should be remanded. The only issue on appeal is whether further proceedings are required, or whether the case ought to be remanded for an immediate award of benefits. The Ninth Circuit precludes a district

court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). The district court must first determine the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Id.* Second, if there was legal error the Court then reviews the record as a whole to determine whether it is fully developed and "all essential factual issues have been resolved." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). In conducting this review, the district court must consider whether there are "inconsistencies between [the plaintiff's] testimony and the medical evidence in the record," *id.* at 1105, or whether the government has pointed to evidence in the record "that the ALJ overlooked" and explained "how that evidence casts into serious doubt" the plaintiff's claim to be disabled, *Burrell*, 775 F.3d at 1141. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. *Id.* Third, if the court concludes that "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," then a remand for immediate award of benefits is appropriate. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (citing *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)).

Since both parties concede that harmful errors have been committed by the ALJ, this Court need only determine whether the record is fully developed, if further proceedings would serve any useful purpose, and if the record as a whole creates serious doubt as to whether the plaintiff is, in fact, disabled.

## DISCUSSION

I.    *The ALJ's Errors*

The Government concedes the ALJ committed the following errors:

1.  The ALJ erred when he claimed to give "great weight" to the opinion of doctor Scott Pritchard, while simultaneously discounting it because it was inconsistent with the residual functional capacity determination. The ALJ also offered no explanation for discounting this opinion. Def. Br. and Mot. for Remand at 4 (doc. 21)

2.  The ALJ erred in rejecting opinion testimony of treating physicians Dr. Heather Kahn and Dr. Gregory Grunwald. The ALJ also discounted other medical evidence without further explanation. *Id.*

3.  The ALJ erred when he failed to discuss the opinion testimony of plaintiff's mother-in law altogether. *Id.*

4.  The ALJ erred by failing to discuss the medical opinion of Dr. Martin Kehrli, a State agency consultant. *Id.*

5.  The ALJ did not discuss the nerve-block procedure which could potentially cure plaintiff's condition despite the Ninth Circuit's express instructions to address this issue. *Id.* at 5.

The government asserts that no error was committed in the ALJ's evaluation of plaintiff's credibility. I disagree, and instead I find that the ALJ erred in evaluating plaintiff's statements about his pain as well as discussed further below.

II.   *The Record is Fully Developed.*

The government's main argument for further proceedings is that the record is not fully developed in terms of the weight given to various medical opinions and that ALJ's failure to explain why some opinions were accepted and others were rejected. Furthermore, the government argues remand is necessary to resolve evidentiary conflicts in the record. Def. Br. and Mot. for Remand at 3. I do not find either of these arguments compelling. After ten years and five hearings, the record is more than adequately developed. There are no outstanding issues at hand that could be resolved through further proceedings. While opinions vary about the exact severity of plaintiff's symptoms, only the opinion of one non-examining physician found that plaintiff was not disabled. Furthermore, every medical opinion in the record shows that plaintiff experiences chronic pain. Tr. 430-31. As the

Ninth Circuit noted in its remand order, "[b]ecause the disabling effects of pain cannot be confirmed by objective medical evidence, [plaintiff's] RFC depends on his subjective complaints." Tr. 440. Thus there are no outstanding issues of fact to resolve through further proceedings.

The ALJ gave little or no weight to the testimony of Dr. Kahn, asserting that her opinion "clearly is based upon the subjective complaints of the claimant." Tr. 430. Dr. Kahn's assertion that plaintiff suffers from chronic pain is uncontradicted in the record and thus should only be discounted for clear and convincing reasons.[1] Even for the portions of Dr. Kahn's opinion that are contradicted, the ALJ still has not provided any specific and legitimate reasons to disregard her testimony. Because chronic pain is "a disease that eludes such [objective] measurement," Dr. Kahn was correct to base her opinion upon the plaintiff's subjective complaints. *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). Sheer disbelief of the severity of the plaintiff's symptoms "is no substitute for substantial evidence." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Further proceedings would do nothing to further develop this already extensive record.

III.    *Plaintiff's Pain Testimony Ought to be Credited as True*

Plaintiff has consistently reported severe pain throughout these proceedings. Such symptoms are subjective in nature and elude objective measurement. *Benecke*, 379 F.3d at 594 (citing *Green-Younger*, 335 F.3d at 108). In order to evaluate a plaintiff's subjective symptom testimony, his impairment must "reasonably be expected to produce the pain or other symptoms," *Lingenfelter v.*

---

[1] Other medical opinions in the record are that of Dr. Grunwald ("there is considerable pain in the anterior chest wall," Tr. 382), Dr. Savier (noting pain in plaintiff's right chest wall, though disagreeing with others as to the cause of it, Tr. 248), Dr. Jensen, a consulting physician (Plaintiff has "pain and tenderness at the junction of the front right ribs," Tr. 287), Dr. Pritchard, a state agency physician (noting plaintiff cannot sustain a 40 hour work week due to chronic pain, Tr. 393) and Dr. Kehrli (confirming diagnosis of costochondritis, Tr. 196).

*Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), and his testimony regarding the severity of his pain must be credible, *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

A.    *Plaintiff's Impairment Could Reasonably Produce Chronic Pain*

As the Ninth Circuit noted, it is undisputed that plaintiff's costochondritis can reasonably be expected to produce pain. Tr. 441. This is consistently reflected in the record. While there has been some disagreement about the *severity* of plaintiff's pain, five separate doctors (treating physician, examining physicians, and non-examining physicians alike) have all concluded that plaintiff's condition causes him chronic pain. Tr. 430-432. The severity of this pain is a subjective matter, and therefore hinges on the credibility of the plaintiff's testimony in regards to his symptoms. *Benecke*, 379 F.3d at 594; *Green-Younger*, 335 F.3d at 108.

B.    *The ALJ Erred in Finding that Plaintiff's Testimony Was Not Credible*

In order to support a finding that a claimant is not credible, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1281. Appropriate considerations for determining a claimant's credibility include:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id.* at 1284. Here, the ALJ used evidence regarding plaintiff's daily activities to determine that his testimony was not credible. Specifically the ALJ found that "claimant admits that he can mow the lawn, help with household chores, drive, shop, prepare meals, watch television, hunt and fish." Tr. 428. The ALJ cites no evidence in the record to support this conclusion, and what evidence there is on these matters supports a finding that plaintiff's pain testimony is credible.

Page 7 - OPINION AND ORDER

In "admitting" that he could mow the lawn, plaintiff said that he could mow an "area of 23 x 40," but that it would take up an entire day "due to the pain [he is] in." Tr. 159. At multiple hearings, plaintiff and lay witnesses both testified that he was no longer capable of even doing this. At the first hearing in 2006, plaintiff was asked if he could mow the law at any time during the past three summers. "Three summers ago, yes," plaintiff replied, "this summer, last summer, no." Tr. 268. Plaintiff's wife corroborated this statement in her own testimony at the same hearing. Tr. 277. Nothing in the record contradicts plaintiff's testimony that he was able to mow the lawn with great difficulty in 2003, but now needs the aid of his neighbors to do yard work.

There is a great deal of testimony in the record that the plaintiff can, in fact, help with the one household chore of doing laundry, so long as he has two to three hours to recuperate afterward. At the 2010 hearing, plaintiff testified that doing a load of laundry required him to rest for most of the day. Tr. 410. This is consistent with testimony at the 2006 hearing in which plaintiff's wife said "He does a load of laundry. Then he's down for two, three hours." Tr. 277. Plaintiff also "admitted" he could, with great difficulty, drive the 15 minutes it takes to get his son to and from school, though sometimes not even managing that. Tr. 263. After the short drive to drop his son off at school, plaintiff testified that he would require anywhere from one to three hours of rest due to the pain caused by the drive. Tr. 274. The only cooking he is capable of is boiling pasta, cooking frozen pizza, and assembling sandwiches, all of which require two to six hours of recovery. Tr. 159. Nothing in the record supports the claim that plaintiff was able to hunt or fish at any point since two years *prior* to filing for benefits. Tr. 267. Finally, while the record does support a finding that plaintiff is capable of watching television (provided he has not taken his medication, Tr. 261) this has no bearing on how credible his testimony regarding the severity of his symptoms is. As several

courts have noted a plaintiff "need not be completely bedridden or unable to perform any household chores to be considered disabled." *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1988) (citing *Yawitz v. Weinberger*, 498 F.2d 956, 960 (8th Cir. 1974)). Thus I see no contradiction between plaintiff's daily activities and his subjective pain testimony and no clear or convincing reason for discounting said testimony.

As for the ordinary techniques for evaluating plaintiff's credibility, the ALJ cites no evidence to indicate that plaintiff has any reputation for lying, no inconsistent statements plaintiff has made about his symptoms, and no evidence to indicate that plaintiff has ever been less than candid over the ten years this case has been going on. The ALJ does bring up the fact that plaintiff quit his last job for reasons not related to his chronic pain, that he looked for work for some months after quitting, and that he provided no rationale for his onset date. Tr. 428. The ALJ is correct that "[t]he inability to secure employment is not the same as the inability to perform basic work activities if hired." *Id.* However, it is just as true that the inability to find work is not evidence of the ability to do work. Thus this is not clear or convincing evidence for discounting plaintiff's subjective pain testimony.

The only remaining ground for doubting plaintiff's credibility is his failure to pursue the nerve block procedure which could potentially cure his symptoms. Tr. 407. This was the primary concern the Ninth Circuit had when remanding this case. Tr. 442. The plaintiff has introduced new evidence from Dr. Kahn explaining the plaintiff's reluctance to undergo this procedure, and Dr. Kahn has corroborated these concerns. Tr. 500. Despite clear instructions to address plaintiff's decision to forego the procedure on remand and the plaintiff's introduction of this new evidence, there was hardly any mention of the nerve block procedure at the fifth hearing and the procedure was

not discussed at all in the ALJ's third decision denying plaintiff benefits. Having reviewed this new evidence, I find that the plaintiff has adequately explained his reluctance to undergo this procedure. Plaintiff explained in 2010 that he did not want to have this procedure because he feared it could worsen his condition, cause his pain merely to migrate, and render him unable to detect the onset of heart attacks. Tr. 408. These fears were corroborated by new evidence from his treating physician, Dr. Kahn, who stated "[i]f we do a block in the thoracic spinal ganglion . . . he may very well not experience atypical chest pain on the right side of his body, as the rest of his family has done." Tr. 500. Thus there is no clear or convincing reason to discount plaintiff's pain testimony.

The ALJ erred in failing to follow the Ninth Circuit's instructions regarding plaintiff's credibility. After examining the thoroughly developed record, I find no outstanding issues of fact to be resolved through further proceedings. Moreover, if plaintiff's testimony regarding the severity of his pain is credited as true, it compels a finding of disability. Furthermore, if Dr. Kahn's testimony that the plaintiff "could not sustain light work" (Tr. 430) were credited as true, the ALJ would also be required to find plaintiff disabled. Therefore, after finding that nothing in the record creates serious doubt that the plaintiff is in fact disabled, I now remand this case for the immediate award of benefits.

IV.    *Plaintiff's Field of Employment is Severely Diminished*

Even if neither Dr. Kahn's opinion nor plaintiff's testimony is credited as true, the VE's testimony at the fifth hearing compels a finding of disability. Setting all of the above discussion aside, the ALJ erred in determining that plaintiff could find other gainful employment. 20 C.F.R. § 404.1512(g).

Page 10 - OPINION AND ORDER

> "Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations . . . the ability to do even a *limited* range of sedentary work does not itself establish disability in all individuals, although a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded."

Social Security Ruling 96-9p (emphasis in original). At the 2015 hearing the VE identified one job, and one job alone that plaintiff might be capable of performing. The VE testified that plaintiff was capable of working as a Surveillance System Monitor, a job with only 300 positions in Oregon. Tr. 613. "Other than that," the VE said, "my opinion would be that work in the sedentary work range would be precluded[.]" *Id*. This alone supports a finding that plaintiff is disabled because the full range of sedentary work has been significantly eroded. *See* Social Security Ruling 96-9p. With only one job available which exists in very limited numbers in the national economy, finding that the full range of sedentary work is not eroded here would negate the purpose behind SSR 96-9p. The Commissioner has not contested this argument in her briefing. This separate rationale a decision to award benefits to the plaintiff.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED for the immediate award of benefits.

IT IS SO ORDERED

Dated this 9th of November 2016.

_____
Ann Aiken
United States District Judge